**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

PAUL RIESSELMAN,

        Defendant.

No. CR09-4061-MWB

**ORDER CONCERNING**
**MAGISTRATE'S AMENDED**
**REPORT AND RECOMMENDATION**
**REGARDING DEFENDANT'S**
**MOTION TO SUPPRESS**

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   *A.  Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   *B.  Objections to Report and Recommendation* . . . . . . . . . . . . . . . . . 17
      *1.  Fruits Of The Search Warrant* . . . . . . . . . . . . . . . . . . . 17
      *2.  Defendant Riesselman's Statement* . . . . . . . . . . . . . . . . . 24
         *a.  Causation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
         *b.  Attenuation* . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# I. INTRODUCTION AND BACKGROUND

## A. Procedural Background

On January 28, 2010, a Superseding Indictment was returned against defendant Paul Benjamin Riesselman, charging him with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 960(a); distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C), and 860(a); being an unlawful user of methamphetamine in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2); and unlawfully possessing an unregistered sawed-off shotgun in violation of 26 U.S.C. §§ 5841, 5845(a), 5861(d), and 5871. On March 1, 2010, defendant Riesselman filed a Motion to Suppress. In his motion, defendant Riesselman seeks to suppress evidence obtained during a search of his residence and person, as well as a statement he made to law enforcement officers.

Defendant Riesselman's Motion to Suppress was referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). After conducting an evidentiary hearing, on March 10, 2010, Judge Zoss filed a Report and Recommendation in which he recommended that defendant Riesselman's Motion to Suppress be granted in part and denied in part. On March 18, 2010, defendant Riesselman filed a motion to reopen the evidence, extend the deadline to file objections to the Report and Recommendation, and continue the trial of this case. Judge Zoss granted the motion, and a supplemental evidentiary hearing was held on March 24, 2010.

On March 31, 2010, Judge Zoss filed an Amended Report and Recommendation in which he recommends that defendant Riesselman's Motion to Suppress be granted in part and denied in part. Judge Zoss concluded that defendant Riesselman's Motion to Suppress should be granted as to the drugs seized from his person because the prosecution conceded the pat-down search of Riesselman by Iowa State Troopers was neither authorized by the

search warrant nor reasonable under the circumstances. Similarly, Judge Zoss found that a cellular telephone, that was also seized during the same search of Riesselman's person, should be suppressed. Judge Zoss next took up the issue of whether Riesselman had requested the assistance of counsel, concluding that Riesselman never expressly asked for a lawyer and a statement he made to law enforcement officers did not amount to a clear and unequivocal request for the assistance of counsel sufficient to invoke his Sixth Amendment right to counsel. Judge Zoss also rejected Riesselman's argument that all evidence seized pursuant to a search warrant for his residence should be suppressed because law enforcement officers executing the search warrant failed to provide him with a complete copy of the search warrant, finding that the officers had a complete copy of the search warrant with them, that there was no evidence that the officers' failure to give Riesselman a complete copy of the search warrant was deliberate and that Riesselman had failed to show he was prejudiced. Finally, Judge Zoss rejected Riesselman's contention that his statement to law enforcement officers should be suppressed because it was the product of the unlawful search of his person. In reaching this conclusion, Judge Zoss found that, except for statements Riesselman made concerning the illegally seized drugs and cellular telephone, Riesselman did not prove that he would not have talked to the officers if the drugs had not been discovered. With respect to Riesselman's statements concerning the drugs found on him and the cellular telephone, Judge Zoss found that the prosecution had met its burden of proving that the connection between the illegal search of Riesselman's person and his statement was so attenuated as to dissipate the taint of the illegal search. Accordingly, Judge Zoss found that Riesselman's statement was given freely, and was not coerced or procured though exploitation of the illegal seizure of the drugs or cellular telephone. Therefore, Judge Zoss recommended that defendant Riesselman's Motion to Suppress be granted in part and denied in part. Defendant

Riesselman has filed objections to Judge Zoss's Amended Report and Recommendation. The prosecution has filed no objections.[1] The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Riesselman's Motion to Suppress.

## B. Factual Background

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> In mid-March 2008, a confidential informant ("CI") met with SA Jones and provided information indicating the CI had purchased methamphetamine from Riesselman over a period of time. The CI stated Riesselman conducted drug transactions in the basement of his residence, and he had surveillance cameras and weapons at the residence. Over the next three to four months, the CI met with Riesselman at Riesselman's residence on numerous occasions during which the CI and Riesselman discussed methamphetamine transactions and weapons. On one occasion, the CI purchased a small quantity of methamphetamine from Riesselman. The details of the encounters between the CI and Riesselman are set forth in the affidavit (Gov't Ex. 4). Among other things, the CI provided

---

[1]The prosecution has not objected to that portion of Judge Zoss's Report and Recommendation in which he recommends granting defendant Riesselman's Motion to Suppress as to the drugs and cellular telephone seized from his person. After conducting its review of the record, the court is not "'left with [a] definite and firm conviction that a mistake has been committed,'" and finds no reason to reject or modify Judge Zoss's recommendation with respect to the warrantless seizure of the drugs and cellular telephone taken from Riesselman's person. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Therefore, the court accepts this portion of Judge Zoss's Report and Recommendation and orders that defendant Riesselman's Motion to Suppress is granted as to the drugs and cellular telephone seized from his person.

information that gang members had been seen at Riesselman's home, and Riesselman had acquired a .308 assault rifle.

Because SA Jones is not a federally-deputized officer, he asked TFO Heideman to assist him in obtaining a federal warrant to search Riesselman's residence. Heideman prepared an affidavit (Gov't Ex. 4) and application for search warrant (Gov't Ex. 3), and presented them to the undersigned on July 3, 2008. Based on the information contained in the affidavit, the undersigned found probable cause to issue the search warrant, and the warrant was issued. (Gov't Ex. 1) The search warrant form contains spaces for the court to designate whether a person, a designated premises, or both will be the subject of the search. The Government requested authority to search premises designated as Riesselman's residence, garage, "and any other outbuildings, garbage containers, and/or vehicles parked on the property[.]" (Gov't Ex. 1) The Government did not request, and the court did not authorize, the search of any persons. (*Id.*) In the space on the search warrant form for the designation of the items for which officers were authorized to search, the form indicates, "See attachment 1." (*Id.*) The court routinely permits warrants and affidavits to refer to attachments, and deems the warrant itself to include both the Search Warrant form (Gov't Ex. 1) and the attachment (Gov't Ex. 2). Attachment 1 lists numerous documents, items of drug paraphernalia, weapons, and other items for which officers were authorized to search pursuant to the warrant.[2] (*See* Gov't Ex. 2)

---

[2]Attachment 1 listed the following items to be searched:

1. Books, records, notes, receipts, ledgers, invoices, contracts, bank statements and records, money drafts, letters of credit, money orders and cashier checks, receipts, passbooks, bank checks, lease agreements, loan

(continued...)

records, diaries, cash receipts and disbursement journals, letters of credit, documents and/or keys relating to safety deposit boxes, automobile titles, bills of sale, lien information, and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money.

2.      Papers, tickets, notes, schedules, receipts, passports and other items relating to intrastate, interstate or foreign travel.

3.      All financial statements, insurance records, tax records, and real estate records.

4.      Addresses and/or telephone books and papers reflecting names, addresses and/or telephone numbers.

5.      All sales receipts for items evidencing the receipt or expenditure of currency or currency equivalents.

6.      Motor vehicle titles, bills of sale, lien information, title transfer applications, or other documents evidencing the purchase, sale, or transfer of any motor vehicle.

7.      Books, records, receipts, notes, ledgers and other papers relating to the transportation, ordering, purchase and/or distribution of controlled substances.

8.      United States currency, precious metals, jewelry and financial instruments including but not limited to stocks and bonds, cashier's checks and money orders.

(continued…)

9.      Indicia of occupancy, residence and/or ownership of the premises described above including but not limited to utility and telephone bills, cancelled envelopes, keys, lease agreements and mortgage records, loan records, documents and/or keys relating to safety deposit boxes.

10.     Any and all other paraphernalia, instrumentalities, substances, chemicals, controlled substances, or documents which are evidence of the illicit possession, use, dealing, manufacture, distribution or dispensing in controlled substances.

11.     Cellular telephones, electronic pagers or answering machines, cassette tapes and their contents. All digital and voice pagers.

12.     Scales, storage containers, pipes, and any and all other paraphernalia, instrumentalities, substances, controlled substances, or documents which are evidence of the illicit possession, use, dealing, manufacture, or distribution in controlled substances.

13.     Books, records, receipts, notes, ledgers and other papers relating to the transportation, purchase and/or distribution of controlled substances.

14.     Any and all other paraphernalia, instrumentalities, substances, controlled substances, or documents which are evidence of the illicit possession, use, dealing, or distribution of controlled substances.

15.     Any weapons, firearms, ammunition or explosives and records reflecting the purchase of these items.

(continued…)

On July 9, 2008, at about 9:00 a.m., Heideman met with Jones and a number of other officers in Crawford County, Iowa, for a briefing prior to execution of the search warrant. Heideman provided Jones with copies of the warrant, including Attachment 1, and Heideman's affidavit in support of the warrant application. Jones briefed the officers about the case, and a member of the Iowa State Patrol Tactical Unit gave the tactical side of the briefing. The Tactical Unit members were to conduct the entry into the residence while the non-tactical officers secured the perimeter and apprehended anyone who might attempt to flee from the premises. Jones assigned Heideman to interview Riesselman, but Jones also planned to question Riesselman himself. The officers intended to ask Riesselman about the activities detailed in the warrant affidavit, such as his drug usage, drug trafficking activities, association with gang members, and weapons. They also planned to see if Riesselman was interested in cooperating with law enforcement in a further investigation.

When the team arrived at Riesselman's residence, the Tactical Unit approached the house and set off two diversionary devices. They secured a female subject, Stephanie Adams, who was inside the residence. Some of the non-tactical officers encountered Riesselman and another individual, George Wayland, outside the rear of the residence.

---

[2](...continued)

16. Any and all records, including but not limited to checks, invoices, purchase orders, receipts [sic] cash register tapes, shipping invoices, ledgers and any other written records evidencing the purchase and sale of firearms and related items.

17. Any and all packaging, packaging materials, acquisition, disposition or sale of firearms and related items.

Attachment 1 at 1-2, Gov't Ex. 2.

They secured and handcuffed Riesselman and Wayland. As Jones entered the area and walked toward Riesselman, one of the other officers approached Jones and told him a small personal-use quantity of methamphetamine had been found in Riesselman's pocket during a pat-down search. Jones took possession of the drugs and approached Riesselman, who was sitting on the ground with his hands cuffed behind his back. Jones and Heideman both testified that before they learned drugs had been found on Riesselman's person, they had planned to interview him to see if he would give a statement and to inquire if he was willing to cooperate in a further investigation.

Jones read Riesselman his *Miranda* rights, and Riesselman indicated he understood his rights and was willing to talk with the officers. Jones directed Riesselman to "sit tight" for a minute, and then Jones asked Heideman to take Riesselman inside the residence and interview him while Jones talked with Wayland and Adams. Heideman took Riesselman inside and the two sat at the kitchen table. Riesselman testified that as they were walking into the residence, he asked, "Should I have an attorney present?" and Heideman said they were "just talking," and if Riesselman talked with him, then he could tell the prosecutor Riesselman had cooperated. Heideman has no memory of this conversation and made no notes about it in his written notes of the interview; however, he testified it was possible that the conversation occurred. Jones also has no memory of Riesselman ever asking for a lawyer at any time.

Although neither officer remembers what occurred with regard to Riesselman's handcuffs, either the handcuffs were removed or his hands were repositioned in front of him because he was able to write and use his hands while he was seated at the table. He was not formally placed under arrest, and there was no plan to arrest him that day, although he was detained while the search of the residence was conducted.

Heideman produced a written Rights Advisory Form (Gov't Ex. 5), which he placed on the table in front of Riesselman. Heideman read each of the paragraphs on the form to Riesselman, and then indicated that if Riesselman understood his rights, he should initial the form next to each of the paragraphs, and sign the form at the bottom. Riesselman executed the form at 9:25 a.m.

After Riesselman signed the form, Heideman reminded him that drugs had been found on his person a short time earlier, and then asked him when he had last used drugs. Riesselman responded that he had last used drugs that morning. Heideman asked if the drugs he had used had been out of the drugs found on his person, and Riesselman responded that they had been. Heideman then asked Riesselman about his drug usage and work history, and about some of the weapons that were in the residence. No one else was present with Heideman and Riesselman at the time the interview began. Heideman did not have a recording device with him, so the first part of the interview was not recorded. He talked with Riesselman for approximately thirty to forty-five minutes before Jones came in and joined them. Jones had a recording device with him, and the remainder of the interview, about an hour-and-a-half, was recorded. (*See* Gov't Exs. 6A & 6B) Jones asked Riesselman about his drug history, people he had bought drugs from and sold drugs to, financial transactions related to drug sales, and the like.

At the supplemental suppression hearing, Riesselman testified that shortly after Heideman advised him of his *Miranda* rights, Heideman told him they "already had him" because of the drugs they had found in his pocket, and if he would talk with the officers, they would talk to the prosecution about reducing his charges or making it easier on him. Riesselman testified that if the officers had not found the drugs on him, he would not have given them a statement. He testified he was sure of this because he knew there was nothing

in his house to cause him concern. He testified that he agreed to talk to the officers because he figured he was in trouble already because of the drugs they had found on his person. Riesselman also testified that the officers seized a cell phone from his person when he was searched outside his house, and during questioning, Jones asked him about numbers stored on the cell phone.

Jones and Heideman finished questioning Riesselman at about 11:30 a.m., so they released him and he was allowed to leave the premises. Jones gave Riesselman a copy of the warrant (Gov't Ex. 1). Jones thinks there was more than one page to the document he gave to Riesselman, but he does not specifically recall if Attachment 1 was with the face page of the search warrant. Riesselman testified that all he was given was the first page of Gov't Ex. 1, the face page of the Search Warrant. He stated that when he left the residence, his mother was there, and he told her he did not understand what the officers were looking for. He noted that the search warrant referred to an "Attachment 1," but there was nothing attached to the page Jones had given him. Riesselman's mother also testified there was only one page to the document. The court finds Riesselman's and his mother's testimony to be credible on this issue, and therefore finds Riesselman only received the first page of the search warrant, and not Attachment 1.

When the officers finished the search and left the residence, Jones left Riesselman's cell phone and a copy of the inventory on the kitchen table. He photographed the items to show what had been left. (Gov't Ex. 7)

Report and Recommendation at pp. 2-7 (footnote added, and footnote and citations omitted). Upon review of the record, the court adopts all of Judge Zoss's factual findings.

## II.  LEGAL ANALYSIS

### A.  Standard Of Review

The court reviews the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation).  While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).  Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time.  *Id.*  If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  In the absence of an objection, the district court is not required "to give any

more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while de novo review generally entails review of an entire matter, in the context of § 636 a district court's *required* de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has been willing to "liberally construe[]" otherwise general pro se objections to require a de novo review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785,

786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, this court will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed). The court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that

'[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate

in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.[3]

---

[3] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will *not* result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions de novo." (citation

(continued...)

As noted above, defendant Riesselman has filed objections to Judge Zoss's Amended Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Riesselman's Motion to Suppress.

## B. Objections to Report and Recommendation

### 1. Fruits Of The Search Warrant

Defendant Riesselman objects to Judge Zoss's conclusion that the fruits of the search need not be suppressed, arguing that the search warrant authorizing a search of his residence was invalid and in violation of the Fourth Amendment for lack of particularity because Riesselman was not provided with a copy of the search warrant that included Attachment 1.

The Fourth Amendment declares that: "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Accordingly, "[t]he Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except for one 'particularly describing the place to be searched and the persons or things to be seized.'" *Maryland v. Garrison,* 480 U.S. 79, 84 (1987) (quoting U.S. Const. Amend. IV). The primary purpose of the Fourth Amendment's particularity requirement is to limit the discretion of those law enforcement officers executing a warrant, in that way preventing general searches. *Id.* ("The manifest purpose of this particularity requirement was to prevent general searches."); *Marron v. United States,* 275 U.S. 192, 196 (1927)

_____

[3](…continued)
omitted)).

17

("The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another."); *see United States v. Wayne*, 903 F.2d 1188, 1195 (8th Cir. 1990) ("The purpose of the particularity requirement is to prevent 'general, exploratory rummaging in a person's belongings.'") (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 467 (1971)). "Particularized descriptions serve this purpose by ensuring that 'the discretion of the officers executing the warrant is limited.'" *United States v. Towne*, 997 F.2d 537, 548 (9th Cir. 1993) (quoting *In re Property Belong to Talk of the Town Bookstore, Inc.,* 644 F.2d 1317, 1319 (9th Cir. 1981)). In addition, the United States Supreme Court has observed:

> that the purpose of the particularity requirement is not limited to the prevention of general searches. *See Garrison,* 480 U.S., at 84, 107 S. Ct. 1013. A particular warrant also "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *United States v. Chadwick,* 433 U.S. 1, 9, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977) (citing *Camara v. Municipal Court of City and County of San Francisco,* 387 U.S. 523, 532, 87 S. Ct. 1727 (1967)), abrogated on other grounds, *California v. Acevedo,* 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991). *See also Illinois v. Gates,* 462 U.S. 213, 236, 103 S. Ct. 2317 (1983) ("[P]ossession of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct").

*Groh v. Ramirez,* 540 U.S. 551, 562-63 (2004) (footnote omitted).

The Eighth Circuit Court of Appeals has instructed that:

> "To satisfy the particularity requirement of the fourth amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be

seized." *United States v. Horn,* 187 F.3d 781, 788 (8th Cir. 1999). "The degree of specificity required will depend on the circumstances of the case and on the type of items involved." *Id* . The particularity requirement "is a standard of 'practical accuracy' rather than a hypertechnical one." *United States v. Peters,* 92 F.3d 768, 769-70 (8th Cir. 1996).

*United States v. Summage,* 481 F.3d 1075, 1079 (8th Cir. 2007). A warrant that fails this particularity requirement is invalid. *Groh,* 540 U.S. at 557; *Massachusetts v. Sheppard,* 468 U.S. 981, 988, n. 5 (1984); *Stanford v. Texas,* 379 U.S. 476, 485 (1965).

"The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh*, 540 U.S. at 557. Nonetheless, the Fourth Amendment does not prohibit a warrant from cross-referencing other documents. *Id.* Indeed, as the Court in *Groh* recognized, "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Id.* at 557-58. In fact, the Eighth Circuit Court of Appeals and the vast majority of the other federal courts of appeals have permitted warrants to satisfy the particularity requirement through an incorporated and attached document. *See United States v. Curry,* 911 F.2d 72, 77 (8th Cir. 1990) (noting that "a description in a supporting affidavit can supply the requisite particularity if 'a) the affidavit accompanies the warrant, and b) the warrant uses suitable words of reference which incorporate the affidavit therein.'") (quoting *United States v. Strand,* 761 F.2d 449, 453 (8th Cir. 1985), in turn quoting *United States v. Johnson,* 541 F.2d 1311, 1315 (8th Cir. 1976)); *see also United States v. Riccardi,* 405 F.3d 852, 863 n.1 (10th Cir.)("Where the warrant itself is insufficiently specific regarding the items to be searched and seized, this Court has held that the affidavit in support of the warrant can cure the want of specificity, but only if the

affidavit is both incorporated in and attached to the warrant."), *cert. denied*, 126 S. Ct. 299 (2005); *United States v. Miggins,* 302 F.3d 384, 395 (6th Cir. 2002)(holding that search warrant that incorporated supporting affidavit was valid anticipatory search warrant), *cert. denied*, 123 S. Ct. 909 (2003); *United States v. Towne,* 997 F.2d 537, 544 (9th Cir. 1993) (holding that separate documents must be expressly incorporated by reference in the warrant and either accompany the warrant or be attached to it before it will be construed as part of it, but rejecting requirement that an affidavit which was expressly incorporated by reference must be attached to warrant), *United States v. Beaumont,* 972 F.2d 553, 561 (5th Cir. 1992); *United States v. Nafzger,* 965 F.2d 213, 215 (7th Cir. 1992) (per curiam) (commenting that a showing of particularity may be made by the warrant, the "affidavit supporting the search warrant (if properly incorporated), or, in limited cases, by the executing officer's knowledge that there was a particular place to be searched, known to both him and the magistrate judge at the time the warrant was issued") (citing *United States v. Maxwell,* 920 F.2d 1028, 1032 (D.C. Cir. 1990)); *United States v. Washington,* 852 F.2d 803, 805 (4th Cir.)("'An affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant.'") (quoting *Rickert v. Sweeney,* 813 F.2d 907, 909 (8th Cir. 1987)), *cert. denied*, 109 S. Ct. 512 (1988); *United States v. Klein,* 565 F.2d 183, 186 n.3 (1st Cir. 1977) (" An affidavit may be referred to for purposes of providing particularity if the affidavit accompanies the warrant, and the warrant uses suitable words of reference which incorporate the affidavit.") .[4]

-----

[4]Earlier this year, in *United States v. Hamilton*, 591 F.3d 1017 (8th Cir. 2010), the Eighth Circuit Court of Appeals recognized that:

(continued…)

Defendant Riesselman cites the Supreme Court's decision in *Groh,* 540 U.S. 551, in support of his argument that the search warrant in this case does not satisfy the particularity requirement by specifying the items to be seized because he was not given a copy of Attachment 1. The facts of this case, however, are completely distinguishable from those in *Groh*. *Groh* concerned the search of a Montana ranch by ATF agents, who were looking for illegal firearms and destructive devices. Based on an informant's tip, ATF Agent Groh prepared a thorough warrant application that identified the place to be searched and all the types of contraband officers wanted to seize. The warrant itself, however, did not incorporate by reference the itemized list of contraband that was included in the warrant application. *Id.* at 554-55. The warrant identified the "person or property to be searched" as a "single dwelling residence two story in height which is blue in color and has two additions attached to the east. The front entrance to the residence faces in a southerly direction." *Id.* at 554 n.2. The resulting search yielded no illegal weapons or other contraband. During the execution of the warrant, Agent Groh claimed to have orally

---

[4](...continued)

> [S]ome of our cases have listed the requirements for properly referencing another document as an either/or proposition. *See, e.g., United States v. Nieman,* 520 F.3d 834, 839 (8th Cir. 2008) ("An affidavit may provide the necessary particularity for a warrant if it is incorporated into the warrant, attached to the warrant, or present at the search.").

*Hamilton*, 591 F.3d at 1025 (citation omitted); *see Rickert v. Sweeney,* 813 F.2d 907, 909 (8th Cir. 1987) (noting that "[a]n affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant."). Because, in this case, the search warrant incorporated Attachment 1 by reference and Attachment 1 accompanied the warrant, the court need not determine the continued legitimacy of the *Nieman-Rickert* standard today nor attempt to harmonize that line of authorities with the *Curry-Strand* line of authorities.

described the objects of the search to the rancher's wife, who was present at the ranch, and by telephone to the rancher.[5]  *Id.* at 555.  When the search was concluded, Agent Groh gave the rancher's wife a copy of the warrant itself, but not the application which contained a list of the contraband to be seized.  The rancher sued Agent Groh and other officers who had conducted the search under *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971), alleging, *inter alia*, that their rights under the Fourth Amendment had been violated.  *Groh*, 540 U.S. at 555.  The district court found no violation of the Fourth Amendment "because it considered the case comparable to one in which the warrant contained an inaccurate address, and in such a case, the court reasoned, the warrant is sufficiently detailed if the executing officers can locate the correct house." *Id.* at 555-56.  The Ninth Circuit Court of Appeals reversed, holding the warrant was invalid because it failed to describe the place to be searched and items to be seized with particularity, and Agent Groh's oral statements to the rancher and his wife did not cure the omission.  *Id.* at 556.  In affirming in relevant part, the Supreme Court held that the warrant violated the particularity requirement of the Fourth Amendment because the warrant itself did not list any of the items that were to be seized, and neither the application for the warrant nor the supporting affidavit accompanied the warrant.  *Id.* at 557-58.  Thus, the fatal flaw in the *Groh* warrant was its failure to cross-reference the supporting affidavit at all.  As the Court explained:

> But unless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search), there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item

---

[5]While the parties disputed precisely what Agent Groh told the rancher and his wife, *see Groh*, 540 U.S. at 555, this dispute is irrelevant to the issues at hand here.

> mentioned in the affidavit. In this case, for example, it is at
> least theoretically possible that the Magistrate was satisfied that
> the search for weapons and explosives was justified by the
> showing in the affidavit, but not convinced that any evidentiary
> basis existed for rummaging through respondents' files and
> papers for receipts pertaining to the purchase or manufacture
> of such items. Or, conceivably, the Magistrate might have
> believed that some of the weapons mentioned in the affidavit
> could have been lawfully possessed and therefore should not
> be seized. The mere fact that the Magistrate issued a warrant
> does not necessarily establish that he agreed that the scope of
> the search should be as broad as the affiant's request.

*Groh*, 540 U.S. at 560-61(citations omitted). Here, unlike the warrant in *Groh,* the

warrant in this case incorporated by reference Attachment 1, which listed in detail the

items to be seized, and Attachment 1 accompanied the warrant. Thus, the court rejects

Riesselman's argument that the search warrant was invalid under *Groh*.

Because the search warrant in this case included a clear incorporation of Attachment

1, which itself contains an explicit list of items subject to seizure, and Attachment 1

accompanied the search warrant, the court concludes that the search warrant satisfies the

Fourth Amendment's particularity requirement because it contains language particularly

describing the place to be searched and the things to be seized. As a result, since the

officers conducting the search of defendant Riesselman's residence had in their possession

a warrant particularly describing the things they were permitted to seize, their search was

clearly reasonable under the Fourth Amendment. This conclusion is not altered by the fact

that a copy of Attachment 1 was not provided to defendant Riesselman, along with a copy

of the search warrant, at the conclusion of the search because a complete copy of the

search warrant with Attachment 1 was present at the time of the search, thereby limiting

the discretion of the officers executing the search warrant and preventing the officers from

engaging in a general search.[6]  Accordingly, defendant Riesselman's objection to Judge Zoss's Report and Recommendation is overruled.

### 2.  *Defendant Riesselman's Statement*

Defendant Riesselman also objects to Judge Zoss's conclusion that no part of Riesselman's statement should be suppressed.  Specifically, defendant Riesselman argues that Judge Zoss erred in finding that, with the exception of his statements concerning the drugs and cellular telephone found on him, Riesselman did not prove that he would not have talked to the officers if the drugs had not been discovered on his person.  With regard to his statements concerning the drugs and cellular telephone found on his person, defendant Riesselman objects to Judge Zoss's legal conclusion that any taint from the officers' unlawful search of his person was sufficiently attenuated by other circumstances so as to purge the taint of it.  The court will take up each of these objections in turn.

---

[6]While the court has concluded that the officers' failure to provide defendant Riesselman with a copy of Attachment 1 does not violate the Fourth Amendment's particularity requirement, the court agrees with Judge Zoss that this failure does constitute a violation of Federal Rule of Criminal Procedure 41(f)(1)(C), which requires the officer executing the warrant to "give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property."  Judge Zoss, however, found that this violation was not deliberate and that defendant Riesselman was not prejudiced by the officers' actions.  Accordingly, Judge Zoss concluded that the Rule 41 violation in this case did not mandate suppression of the evidence.  Defendant Riesselman has not objected to this portion of Judge Zoss's Report and Recommendation and, after conducting its review, the court finds no reason to reject or modify Judge Zoss's recommendation on this issue.  Therefore, the court accepts this portion of Judge Zoss's Report and Recommendation.

### *a.    Causation*

Defendant Riesselman contends that Judge Zoss erred in concluding that his statement to the officers was not the fruit of the illegal search of his person and the resulting seizure of drugs and a cellular telephone.

Evidence obtained in violation of the Fourth Amendment is subject to possible exclusion. *See Hudson v. Michigan,* 126 S. Ct. 2159, 2163-65 (2006); *United States v. Marasco*, 487 F.3d 543, 547 (8th Cir. 2007). "The purpose of the Fourth Amendment exclusionary rule is to deter unreasonable searches, no matter how probative their fruits." *Oregon v. Elstad*, 470 U.S. 298, 306 (1985); *accord Stone v. Powell,* 428 U.S. 465, 486-89 (1976) (holding deterrence of Fourth Amendment violations by law enforcement personnel is the prime purpose of the exclusionary rule); *United States v. Scroggins*, 361 F.3d 1075, 1083 (8th Cir. 2004)("The exclusionary rule's purpose is deterrence."). The exclusionary rule applies equally to items of physical evidence as well as verbal statements. *Wong Sun v. United States,* 371 U.S. 471, 485 (1963) (observing that "the Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of 'papers and effects'"); *see United States v. Yousif*, 308 F.3d 820, 832 (8th Cir. 2002) ("Verbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search.") (citing *Wong Sun*, 371 U.S. at 485). The exclusionary rule is supplemented by the "fruit of the poisonous tree" doctrine, which bars the admissibility of evidence obtained as a result of an unconstitutional search or seizure. *See Wong Sun,* 371 U.S. at 484-85. However, in order to exclude evidence under the fruit of the poisonous tree doctrine, the defendant must show more than "the mere fact that a constitutional violation was a 'but-for' cause of [the police's] obtaining [the] evidence." *Hudson,* 547 U.S. at 592; *accord United States v. Peralez,* 526 F.3d 1115, 1121 (8th Cir.

2008) ("Only if the constitutional violation was at least a but-for cause of obtaining the evidence is suppression of evidence the appropriate remedy.") (internal quotation marks omitted). "[E]xclusion may not be premised on the mere fact that a constitutional violation was a 'but-for' cause of obtaining evidence. *Hudson,* 547 U.S. at 592. In other words, "but-for causality is only a necessary, not a sufficient, condition for suppression." *Id.; see Segura v. United States,* 468 U.S. 796, 814 (1984) (holding that illegality as a but for cause of the acquisition of the evidence is a necessary, but not sufficient condition for exclusion under the fruit of the poisonous tree doctrine). As the Eighth Circuit Court of Appeals has explained, "[t]here is no reason to exclude evidence, however, if 'the police misconduct is not even a 'but-for' cause of [the] discovery' of the evidence." *Marasco*, 487 F.3d at 547 (quoting *Hamilton v. Nix*, 809 F.2d 463, 465 (8th Cir.) (en banc), *cert. denied,* 483 U.S. 1023 (1987)).

Although the prosecution bears the burden of proving that illegally obtained evidence is not fruit of the poisonous tree, the defendant bears the initial burden of establishing a nexus between the illegality and the challenged evidence. *See Alderman v. United States,* 394 U.S. 165, 183 (1969) (holding that defendant must come forward with specific evidence demonstrating that evidence is tainted to be entitled to suppression under fruit of the poisonous tree doctrine); *Marasco*, 487 F.3d at 547 ("When the issue is whether challenged evidence is the fruit of a Fourth Amendment violation, the defendant bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence."). If a defendant establishes a "but for" relationship between evidence and prior illegality, the burden shifts to the prosecution to show that the connection between the evidence and the illegality is so attenuated as to dissipate the taint. *See United States v. Swope*, 542 F.3d 609, 613 (8th Cir. 2008) (noting that "the exclusionary rule is inapplicable when the connection between the constitutional violation

and the evidence to be excluded is 'so attenuated as to dissipate the taint.'") (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)); *Yousif*, 308 F.3d at 830 ("The controlling question is '"whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."'" ) (quoting *Wong Sun*, 371 U.S. at 484-85). In other words, at some point, while evidence may still be "fruit," it is, nonetheless, admissible because it is no longer "tainted." Of course, the line between "taint" and "attenuation" is not an easy one to draw. As Justice Powell observed, "the question of attenuation inevitably is largely a matter of degree." *Brown v. Illinois,* 422 U.S. 590, 609 (Powell, J., concurring).

Here, Riesselman maintains that Judge Zoss erred in finding that he had not proven that the illegal seizure of drugs from his person was a but-for cause of his statement. The court concurs with Judge Zoss's analysis on this point. There is no evidence that, but for the finding of the personal-use quantity of methamphetamine on Riesselman, the officers would have refrained from seeking to question Riesselman. Moreover, the court rejects defendant Riesselman's testimony, made at the supplemental suppression hearing, that he would not have given a statement to the officers if the drugs had not been discovered. Significantly, this statement is not only self-serving, but smacks of recent invention, as defendant Riesselman did not make such an assertion in his testimony at the original suppression hearing. Instead, this factual assertion was first made only after Judge Zoss filed his original Report and Recommendation in which he noted, "if Riesselman had testified that he was so fearful or otherwise swayed by emotion at the discovery of the drugs in his pocket that he was motivated to speak to the officers, then a different result might be warranted." Report and Recommendation at 15 (docket no. 36). Simply put, defendant Riesselman has failed to point the court to any convincing evidence that he was

so influenced by the officers' finding of a small personal-use quantity of methamphetamine on him that he was compelled to speak to the officers. Therefore, defendant Riesselman's objection to this portion of Judge Zoss's Report and Recommendation is overruled.

### b. *Attenuation*

Defendant Riesselman's remaining objection concerns his statements regarding the drugs and cellular telephone found on his person. He objects to Judge Zoss's legal conclusion that any taint from the officers' unlawful search of his person was sufficiently attenuated by other circumstances so as to purge the taint of it.

In discussing "the fruit of the poisonous tree" doctrine and the purging of illegal taint, the Eighth Circuit Court of Appeals recently observed that:

> In a "fruit of the poisonous tree" doctrine case, a constitutional violation has occurred, and the issue is whether law enforcement obtained evidence "by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

*United States v. Alvarez-Manzo* , 570 F.3d 1070, 1077 (8th Cir. 2009). In determining whether evidence is tainted by a prior violation of constitutional rights, the court is required to ask "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun,* 371 U.S. at 488. In conducting this fact-sensitive inquiry, the Eighth Circuit Court of Appeals has instructed courts to consider the following three factors: "(1) the giving of *Miranda* warnings, (2) the temporal proximity of the illegal [conduct] and the alleged consent, (3) the presence of intervening circumstances, and (4) the purpose and flagrancy of the official misconduct." *United States v. Lakoskey*, 462 F.3d 965, 975 (8th Cir. 2006)

(internal quotation marks and citation omitted).  Based on an examination of these factors, the court agrees with Judge Zoss's conclusion that any taint from the searching officer's illegal search of Riesselman's person was adequately attenuated.  First, both Special Agent Jones and Special Agent Heideman separately provided defendant Riesselman with *Miranda* warnings before commencing their interview with him.  Jones did so orally when he first encountered Riesselman outside of his residence and Heideman did so again when Riesselman was brought into his residence.  Heideman did so through a written Rights Advisory Form (Gov't Ex. 5), which he placed in front of Riesselman and proceeded to read to Riesselman.  Special Agent Heideman told Riesselman that if he understood his rights, he should initial the form next to each of the paragraphs, and sign the bottom of the form.  Riesselman did so.  Second, Special Agent Heideman, unaware that the drugs had been seized illegally, did not mention the seized drugs before informing Riesselman of his rights and obtaining his consent to speak with him.  Special Agent Heideman mentioned the seized drugs only after Riesselman had already agreed to speak with him.  Moreover, the officer who conducted the unlawful search was not present during Riesselman's interview.  Third, while the searching officer's illegal conduct occurred less than a half an hour before Special Agent Heideman started his interview with defendant Riesselman, the searching officer's illegal conduct was not the precipitating event that caused Special Agents Heideman and Jones to seek to interview defendant Heideman. That event was the confidential informant's prior purchase of drugs from Riesselman.  Judge Zoss found, and the court agrees, that Special Agents Heideman and Jones would have sought to interview defendant Heideman absent any information about the drugs and cellular telephone being found on Riesselman's person.  Accordingly, the court concludes that defendant Riesselman's voluntary consent to speak with Special Agents Heideman and Jones was

sufficiently an act of free will to purge the taint of the searching officer's illegal conduct. Therefore, this objection is also overruled.

### III. CONCLUSION

Therefore, for the reasons set out above, the court, upon a *de novo* review of the record, accepts Judge Zoss's Report and Recommendation and **grants in part and denies in part** defendant Riesselman's Motion To Suppress. Defendant Riesselman's motion is denied as to his statement to Special Agents Heideman and Jones, as well as evidence seized pursuant to the execution of the search warrant on his residence on July 9, 2008. Defendant Riesselman's motion is granted as to the drugs and cellular telephone seized from his person.

**IT IS SO ORDERED.**

**DATED** this 28th day of April, 2010.

_Mark W. Bennett_
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA